```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


_____
FIH, LLC,                       )
                  Plaintiff,    ) No: 3:15-CV-00785 (JBA)
                                )
      v.                        ) April 30, 2019
FOUNDATION CAPITAL PARTNERS,    )
LLC, ET AL.,                    )
                  Defendants.   ) 4:04 p.m.
_____)


                      141 Church Street
                    New Haven, Connecticut

                 TELEPHONIC STATUS CONFERENCE

B E F O R E:

        THE HONORABLE JANET BOND ARTERTON, U.S.D.J.


A P P E A R A N C E S:
For the Plaintiff:
     SAMUEL J. LIEBERMAN, ESQ.
     BEN HUTMAN, ESQ.
     Sadis & Goldberg, LLP
     551 Fifth Avenue, 21st Floor
     New York, NY 10176
     212-573-6675
     Email: bhutman@sglawyers.com
            slieberman@sglawyers.com

For Defendant Dean Barr:
     PETER M. NOLIN, ESQ.
     Carmody Torrance Sandak & Hennessey, LLP - STMFD
     707 Summer Street 3rd Floor
     Suite 300
     Stamford, CT 06901-1026
     203-425-4200
     Email: pnolin@carmodylaw.com

For Defendant Joseph Meehan:
     JOSEPH MEEHAN, Pro Se



                              Official Court Reporter:
                              Tracy L. Gow, RPR
                              203-910-0323
```

```
 1    A P P E A R A N C E S (Cont'd)

 2    For Defendant Joseph Elmlinger:
           DAVID G. TRACHTENBERG, ESQ.
 3         STEPHEN J. ARENA, ESQ.
           545 Fifth Avenue
 4         New York, NY 10017
           212-972-2929
 5         Email: dtrachtenberg@trflaw.com
                  sarena@trflaw.com
 6
           ANDREW M. ZEITLIN, ESQ.
 7         Shipman & Goodwin
           300 Atlantic Street
 8         Stamford, CT 06901-3522
           203-324-8100
 9         Email: azeitlin@goodwin.com

10    For Defendant Thomas Ward:
           STEPHEN GEORGE WALKO, ESQ.
11         ANDREA CHRISTINE SISCA, ESQ.
           Ivey, Barnum & O'Mara LLC
12         170 Mason Street
           Greenwich, CT 06830
13         203-661-6000
           Email: swalko@ibolaw.com
14                asisca@ibolaw.com

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | THE COURT:  Good afternoon, Counsel.  This is FIH v. |
| 2 | Foundation Capital Partners, LLC, et al., 15-CV-785.  May I |
| 3 | have appearances?  We'll start with the Plaintiff. |
| 4 | MR. LIEBERMAN:  On behalf of plaintiff, FIH, LLC, |
| 5 | Sam Lieberman and Ben Hutman of Sadis & Goldberg, LLP. |
| 6 | THE COURT:  Thank you.  And for Mr. Barr? |
| 7 | MR. NOLIN:  Peter Nolin, Your Honor, of Carmody |
| 8 | Torrance Sandak & Hennessey, for Mr. Barr. |
| 9 | THE COURT:  Thank you.  And Mr. Meehan? |
| 10 | MR. MEEHAN:  Joseph Meehan appearing on his own, *pro* |
| 11 | *se* -- appearing *pro se*, Your Honor. |
| 12 | THE COURT:  All right.  Mr. Meehan, is that status |
| 13 | going to stay true all the way through trial? |
| 14 | MR. MEEHAN:  No, Your Honor, it will not.  I'm |
| 15 | arranging for Mr. Whitcomb to come back on, if I can arrange |
| 16 | that. |
| 17 | THE COURT:  All right.  And, so, you'll need to |
| 18 | advise him carefully of what we discuss here today.  Okay? |
| 19 | MR. MEEHAN:  Understood, Your Honor.  Thank you very |
| 20 | much. |
| 21 | THE COURT:  And for Mr. Ward? |
| 22 | MR. WALKO:  Good afternoon, Your Honor.  Stephen |
| 23 | Walko and Andrea Sisca from Ivey, Barnum & O'Mara. |
| 24 | THE COURT:  And Mr. Elmlinger? |
| 25 | MR. TRACHTENBERG:  Good afternoon, Judge.  It's |

1  David Trachtenberg and Stephen Arena from Trachtenberg Rodes

2  & Friedberg.  And Andy Zeitlin of Shipman & Goodwin is on the

3  phone, as well.

4       THE COURT:  All right.  So that, for the time being,

5  tells me who is representing each of the defendants, and Mr.

6  Meehan will keep us updated if his *pro se* status changes.

7       Okay.  You have given me your status reports, and

8  the issues you seem to identify are the defendants' desire to

9  bring on another summary judgment motion following remand of

10 this case from the Second Circuit.

11      In the status report from plaintiff, the response to

12 that suggestion seems to be this case is ready for trial, as

13 the Second Circuit's decision anticipated.  Did you want to

14 add anything further to that Mr. Lieberman or Mr. Hutman?

15      MR. LIEBERMAN:  Yes, Your Honor.  This is Sam

16 Lieberman.  The mandate of the Second Circuit's decision is

17 to remand for proceedings consistent with the opinion, and

18 the opinion anticipates a trial.  It also states that

19 defendants remain free to argue to a jury, based on the

20 merger clause and other factors, that FIH did not reasonably

21 rely on any misrepresentations the jury might conclude were

22 made.  That's page 25 of the slip opinion, star 8 of the

23 Westlaw citation.

24      That mandate is for trial.  So asking for a renewal

25 of summary judgment arguments, that they're claiming were not

1  addressed and they didn't cross-appeal, would be inconsistent

2  with the mandate.  So that's -- I don't think the Second

3  Circuit opinion can be read any other way.

4          THE COURT:  Anything further on behalf of the

5  Defendants?

6          MR. TRACHTENBERG:  It's David Trachtenberg, Your

7  Honor.  In your decision on the summary judgment motion, you

8  stated expressly that the Court concludes that reliance by

9  plaintiffs on the alleged misreps was not reasonable as a

10  matter of law.  And then you went on to say:  Accordingly,

11  this opinion does not analyze whether there is a dispute of

12  material fact as to actual reliance or as to any of the other

13  elements that plaintiff must prove as part of its claim under

14  Section 10(b).

15          You now have the opportunity to consider whether you

16  wish to narrow this case further or possibly avoid a lengthy

17  trial.  These issues have already been briefed to you, and,

18  at least based on our reading of your prior decision, you

19  chose what you thought was the most expeditious way to

20  address the case as a whole.

21          Needless to say, the defendants agreed with you.

22  The Second Circuit did not.  And perhaps I was not the best

23  advocate for Your Honor's point of view at argument, but the

24  Second Circuit came on the bench swinging hard, principally

25  because, at least based on their questions, it seemed they

1    were troubled by the notion that the plaintiff should not

2    have its day in court on the Barr-Meehan representations

3    about the nature of their relationship.  There was little, if

4    any, discussion from the Court about the Pipeline, as I

5    recall.

6          One possibility here would be that you could narrow

7    the case by addressing the issue of whether there was actual

8    reliance or reasonable reliance on the Pipeline.  Another

9    possibility is that you could narrow the case by considering

10   the arguments presented to you as to whether Mr. Elmlinger or

11   Mr. Ward were makers.  And the -- there were many reasons

12   presented to you in the previous briefs as to why there was

13   no actual reliance and why it was obvious that the plaintiff

14   could not show reasonable reliance.

15          And, respectfully, we maintain that the fact that

16   you chose one of those rather than another, rather than any

17   of the others, doesn't mean that you might not also have

18   agreed with us on some of these other issues.

19          THE COURT:  Well, I think that at this point that

20   inquiry has been superseded.  The course that this -- that we

21   chose has been resoundingly rejected by the Second Circuit.

22   The issues that you identify as ones you wish to consider a

23   second go at on a second summary judgment are pretty

24   classically going to be fact-based and ought to go to trial.

25          So I'm not going to do another summary judgment

1    stage.  I'm going to let the issues of whether Ward and
2    Elmlinger were makers be defenses for them.  I'm going to let
3    the jury look at the entire context of the transaction to
4    decide whether the plaintiff, as a sophisticated investor,
5    reasonably relied on the alleged misstatements; and I think,
6    similarly, the jury should be allowed to determine whether,
7    in fact, its decision to invest predated alleged
8    misstatements -- that would be your defense -- or whether the
9    ultimate -- what the ultimate decision-maker knew at the time
10   of the investment.
11          So the falsity of the Pipeline statement and the
12   relationship question will also be for trial and will be in
13   the context of the reasonable reliance.
14          So we're going to move to trial with not quite
15   dispatch, because you advise that the -- let's see --
16   plaintiff advises that defense counsel isn't available until
17   after Labor Day, for trial.  Is that accurate?
18          MR. LIEBERMAN:  That's accurate from plaintiff's
19    perspective.  I'll let defendants comment if I'm incorrect.
20          MR. TRACHTENBERG:  For our part, we are available,
21   more or less, anytime in the month of September.  This is
22   David Trachtenberg, Judge.
23          THE COURT:  Okay.  So let's do this.  I'm not
24   available in the month of September, but if we have -- I have
25   another trial that is September 3 to 26.  If we have jury

1   selection October 17th and we hold trial October 21 to

2   November 1, that takes care of the time needs of this trial;

3   does it not?

4           MR. TRACHTENBERG:  What dates did you say, Judge?

5   October 21?

6           THE COURT:  October 21 through November 1.  Two

7   weeks.

8           MR. NOLIN:  It does for Peter Nolin, Your Honor.

9           MR. TRACHTENBERG:  Judge, I don't -- it's David

10  Trachtenberg, and perhaps Mr. Lieberman has better

11  information on his calendar.  I'm just counting the days in

12  October.  There are two sets of Jewish holidays in October

13  after Yom Kippur.  I believe that one of them is somewhere

14  around the 12th and the 13th, and the next one should be

15  anywhere around between the 19th and the 21st.  I'm not

16  sure -- Sam, do you know which days those days end?  Are we

17  all available on the 21st, in other words?

18          MR. LIEBERMAN:  Yeah, that -- I believe that ends

19  the night of the 22nd, is the last of the Jewish holidays,

20  which is going to be an issue for my client and on my end, as

21  well.

22          THE COURT:  Okay.  Well, we obviously will not be

23  holding trial on the days that parties or counsel are

24  precluded by religious obligations.  So we will just simply

25  note that the time period for the trial will go through

1  November 9th, and that will allow us to have days off during

2  that time period.  Okay?

3          MR. TRACHTENBERG:  That's fine from our perspective,

4  Judge.  Thank you.

5          THE COURT:  All right.  So you need to advise your

6  witnesses and your clients and everybody that we need to have

7  that time from them in order to try this case, and October

8  17th is jury selection.  They are invited, but obviously

9  don't -- they are obviously invited because they're going to

10  be introduced to the jury.  It's not mandatory that they be

11  here.

12          Okay.  The last thing is that the issue of the

13  Plaintiff's expert that was disclosed at the 11th hour and

14  not -- and whose report was not considered on summary

15  judgment, comes back again.  And the parties -- I guess it's

16  the plaintiff -- wants to extend expert discovery so

17  defendants can depose Mr. Finkel, their expert, and disclose

18  their own expert and have that person deposed.

19          Given that we've got six months between now and

20  trial, that gives you plenty of time to undertake this.  Is

21  that what you your pleasure is on both sides?

22          I'll hear from defendant, please.  And I don't know

23  who's going to speak for all of them.  Mr. Nolin?

24          MR. NOLIN:  I think if the expert is in the case, I

25  assume the defendants would want to take discovery and have

1    an opportunity to have a counter-expert if they deem it

2    necessary.

3            THE COURT:  All right.  This "if they deem it

4    necessary" is where we kind of got in trouble before.  The

5    plaintiff's -- Mr. Trachtenberg, any problem with being able

6    to disclose your own expert and depose the plaintiff's?

7            MR. TRACHTENBERG:  No, Your Honor.  We would -- if

8    this is Your Honor's ruling, we will take that deposition.

9    And if we are going to bring our own expert in, as I assume

10   we will, we will disclose his identity or her identity and we

11   will make that person available for a deposition.

12           I would note that Your Honor provided ample reasons

13   for your exercise of discretion.  The Second Circuit upheld

14   every single one of them.  We don't think expert discovery is

15   required.  Apart from a different view, of course, we'll

16   participate.

17           THE COURT:  Well, the plaintiff has a different

18   view.  That's why they disclosed a report six minutes before

19   the close of discovery.  But it was within the discovery

20   period, notwithstanding our prior colloquy explaining how

21   that doesn't work.

22           But since we have six months, why don't we have a

23   schedule by which the defendants will depose Mr. Finkel in

24   the next 30 days, that the defendants will disclose their

25   expert 30 days after that deposition is completed, and the

1    plaintiff will have 30 days in which to depose that witness.

2              MR. WALKOL:  Your Honor, Stephen Walkol for Tom

3    Ward, if I may?

4              THE COURT:  Yes.

5              MR. WALKOL:  Just in terms of the Court's ruling,

6    does this -- just so that I'm clear here and so that we can

7    just note our objection, we would -- if the Court is ruling

8    that the expert is now allowed, we would simply object to

9    that on the basis that simply because a Motion for Summary

10   Judgment was filed because there was an appeal of that and it

11   was handed back to Your Honor, we would assert doesn't

12   necessarily change the fact and should then benefit plaintiff

13   based on your initial ruling.  And, so, we would just like to

14   note that objection.

15             THE COURT:  That's fine.  Those are two separate

16   questions, whether I would consider the late -- the

17   last-minute expert disclosure, where you hadn't had any

18   chance to depose, is a different question, in my view, as to

19   whether the parties should be given the opportunity to -- the

20   defendants, to be able to do the deposition that they did

21   not -- were not able to do and then disclose their own

22   experts.

23             I think they're two separate questions:  What we're

24   going to do for trial, and what the Court's basis was for not

25   considering that expert report for summary judgment purposes.

1           But your objection is noted.  The Joint Trial Memo

2     will be due 30 days after all of this is completed, which

3     should take us up about to end of August.  Along with your

4     Joint Trial Memo will come, as the standing order provides,

5     your *voir dire* and your requests for charge, and then we need

6     to have a final pretrial conference in which we can address

7     any matters that you raise in your Joint Trial Memo, because

8     you'll remember that any objections to evidence that can be

9     ruled on pretrial need to be included in that.

10           If you're going to be objecting to each other's,

11    either witnesses or exhibits, you're going to need to make

12    sure the Court has a copy of what is objected to.  And you're

13    going to need to exchange your exhibits well before the Joint

14    Trial Memo is due, so that you know whether you have

15    objections and so that you can resolve, without need of the

16    Court's intervention, some of those objections, perhaps.

17           So let's get a date locked on all your calendars for

18    a final pretrial conference, the purpose of which will not

19    only be to discuss procedures but will be, also, to review

20    objections and motions *in limine* or other motions that you

21    bring pretrial that can be decided pretrial.  Okay?

22           So let me see.  We are up to -- I have available

23    September 18 -- Wednesday, September 18, at 3:30.  That may

24    either be a late night or need to be concluded on the 20th at

25    2:30.  So can I get you to mark those two time periods off on

1   your calendars, please?

2          MR. LIEBERMAN:  Can you -- Your Honor, the second

3   one?  I just want to be sure I got the second one right.

4          THE COURT:  Yes, September 20th at 2:30.

5          (Reporter interruption.)

6          THE COURT:  The court reporter does not recognize

7   the voice of who just spoke.

8          MR. LIEBERMAN:  Sam Lieberman for plaintiff.  Thank

9   you.

10         THE COURT:  All right.

11         MR. TRACHTENBERG:  This is David Trachtenberg.  We

12  have the dates marked, Your Honor.

13         THE COURT:  Okay.  Thank you.  If there is no

14  apparent --

15         Oh, I didn't hear that.

16         MR. LIEBERMAN:  The second date should be okay, too.

17         THE COURT:  All right.  So we'll do those.  I will

18  issue a written order with these dates.

19         Mr. Meehan, you can give that to your incoming

20  counsel, and they're going to have to be counsel who can

21  accommodate the schedule.  Okay?

22         MR. MEEHAN:  Understood, Your Honor.  Thank you.

23         THE COURT:  All right.  Anything else that --

24         MR. NOLIN:  Your Honor, Peter Nolin.

25         THE COURT:  Yes.

```
1          MR. NOLIN:  Two issues -- one substantive, and I
2    guess the latter procedural.  As I understand Your Honor's
3    ruling and the appeal and the ruling of the Second Circuit,
4    the only thing that has come back to you is the 10b-5 claim.
5    The other claims were dismissed.  They were not appealed.
6    There's no ruling from the Second Circuit saying the pending
7    state claims are back.  And, in fact, there is now a state
8    court case, that I'm not in with Mr. Barr, but it is
9    currently pending in Stamford.
10         THE COURT:  Okay.  Thank you for reminding me.
11         MR. NOLIN:  Thank you.
12         THE COURT:  Thank you more reminding me.  I meant to
13   raise that with you, because neither status report refers to
14   the state claims.  And you tell me that those state claims
15   have now been brought over in state court.  Is that correct?
16         MR. NOLIN:  Not exactly, Your Honor.  The state
17   claims are the plaintiff's, but there is a pending state
18   court action.  I think the plaintiff has tried to stay that
19   action with the hope that those claims would come back here.
20   The Court has -- in Stamford -- has not stayed the case, but
21   I don't believe the plaintiff has pled those claims yet in
22   state court.
23         MR. LIEBERMAN:  Your Honor, plaintiff raised these
24   issues in its appeal.  The decision is vacated in its
25   entirety, including dismissing the state court claims.
```

1    There's been no claim that an appeal of the vacating of the

2    state court claims is waived.  It's raised in our papers.

3    And raising this five seconds before the end of a status

4    conference isn't the best forum for it.

5         But it's adequately pled.  And it's interesting to

6    hear Mr. Nolin commenting on state court actions in which

7    he's not counsel for Mr. Barr in that action.  But plaintiff

8    has not asserted those claims in that other case, and

9    plaintiff does not consent to going back to the starting

10   point for claims that it appealed to keep in this case.

11        THE COURT:  All right.  As I recall, the Second

12   Circuit's decision is completely silent on the issue of the

13   state court claims, except possibly to say that they had been

14   dismissed, given the summary judgment on the federal claim.

15   And, as is noted, the directive of the mandate is that the

16   judgment is vacated and remanded for further proceedings.

17        Let me hear the others if they wish to be heard on

18   whether or not that means that the state claims are all back.

19        MR. TRACHTENBERG:  Yes, Your Honor.  It's David

20   Trachtenberg.  We were surprised to see that in -- as we

21   monitored the state case, that in a recent motion to stay

22   Mr. Lieberman simply informed the Connecticut Superior Court

23   that the state claims were coming back to be tried by Your

24   Honor.

25        That's just -- with all due respect to my colleague

1    Mr. Lieberman, I think he has the procedure wrong.  What
2    happened was simply that your decision granted the
3    defendant's Motion for Summary Judgment on Plaintiff's 10b-5
4    claim, and then you dismissed plaintiff's state law claims.
5    Then the Court issued a judgment along the same lines.  That
6    meant that plaintiff could take its state claims to state
7    court.  They had nearly a year and a half to do so.

8            Plaintiff then appealed the judgment regarding 10b-5
9    issue, and it appealed your exercise of discretion respecting
10   the expert issue, but it did not brief any appeal of your
11   exercise of discretion to dismiss the state claims.  It
12   raised the state claim issue cursorily in the notice of
13   appeal.  It added one sentence, the last sentence of its
14   reply brief on that issue, in its conclusion.  But that's not
15   enough.

16           The Second Circuit law is clear that an appellant
17   must brief any appeal in its appellate brief, in its initial
18   brief, and in this case FIH did not brief any appeal of your
19   exercise of discretion to dismiss the state law claims.  The
20   Second Circuit then vacated the judgment, which was the
21   judgment in defendant's favor on the 10b-5 claim.  That's all
22   it did.  It didn't reverse your dismissal of the state law
23   claims, because that issue was not appealed.

24           All that means that you're not required to take back
25   the state claims.  It's back in your discretion.  You have

1    exercised that discretion previously.  Three of the four
2    reasons that Your Honor raised as to why you declined to
3    exercise jurisdiction over those claims are still applicable.
4    There's still the distinct possibility of now those questions
5    of state law.  There are many -- there will be many different
6    issues that have not been litigated at all in this matter.

7          The case has been treated all along as a 10b-5
8    claim.  As Your Honor noted, the briefing on the state issues
9    was perfunctory.  Plaintiff always treated this as a 10b-5
10   claim.  There are different elements between the state law
11   claim and the 10b-5 claim.  There'll be a different
12   evidentiary standard on the fraud issues.  Unjust enrichment
13   is going to raise different issues.  CUSA is a complicated
14   body of Connecticut statutory law.  Connecticut law on
15   mitigation may be different.

16         And what's going to happen is that the five state
17   law claims will come to predominate this case; and in the
18   meantime, we have this related state law case that is pending
19   and has been pending for many, many, many months, where these
20   issues can be addressed.  And, particularly, if we may end up
21   having some *pro se* litigants here, it's going to lengthen
22   this whole proceeding substantially.

23         And, in short, we maintain that all of the
24   reasons -- all but one of the reasons on the basis of which
25   you've exercised your discretion in the past are still good

1  reasons for this case to go to trial on the issues that we've

2  litigated, which is the 10b-5 issues.

3       MR. LIEBERMAN:  And if I could respond on behalf of

4  the plaintiff?

5       THE COURT:  Yes.

6       MR. LIEBERMAN:  Unless the Court wants -- the end

7  decision vacated -- any decision dismissing the state law

8  claims has been vacated.  There's no basis to deem those --

9  there's no basis remaining on the books to deem those

10  claims -- to deem those claims dismissed anymore.  It's been

11  vacated and remanded for further proceedings.  And this is

12  raised above.

13       This claim is, frankly, lacking any merit.  We

14  specifically referenced in our jurisdictional statement our

15  arguments with respect to the state law claims above, and the

16  Court didn't say we're vacating part of the judgment in part

17  and keeping the state law dismissal there.  And the basis for

18  the dismissal of the supplemental state law claims was the

19  dismissal of the federal claims.

20       We raised it above.  We appealed it.  And this idea

21  that it's discretionary is not the case.  So we don't see

22  what the basis is for this argument.  These have been

23  properly raised, and we don't see how this is now some sort

24  of discretionary determination.  We've appealed it, and the

25  basis for dismissing it is now gone.  So, that's our

1 position.

2          THE COURT:  Well, as you of course recall that I

3 noted the cursory dealing with the state law claims on the

4 ruling for summary judgment, and that they relied primarily

5 on incorporation by reference of the arguments on the

6 viability of the federal claim and noted that because of this

7 brevity the Court couldn't make a determination on the merit

8 of important state law questions that were raised in the

9 cross-motions for summary judgment.  And the denial of

10 summary judgment on the cross-motions was never appealed.

11          So here's what I'd like you to do.  I don't think

12 this is a straight-up question.  And given how it may change

13 the nature of this trial, I'd like to understand two things:

14 One, whether this is a discretionary matter, as under the

15 supplemental jurisdiction statute in the procedural context

16 of this case; and two, whether there are reasons, including

17 those noted in the summary judgment ruling and encompassing

18 the pendency of state law claims, why we should not include

19 the state law claims in the forthcoming trial.

20          I'd like to have some brief briefing from you on

21 these two issues, I'd like it to be limited to ten pages, and

22 I'd like to have it in ten days.  Can you do that?

23          MR. TRACHTENBERG:  We'll do it, Your Honor.

24          MR. LIEBERMAN:  Yes, Your Honor.

25          THE COURT:  All right.  And then if it is necessary,

1    if the compulsion moves you to reply to the other side's

2    briefing, you have five days to do that, but that cannot

3    exceed five pages.  Okay?

4         Let's just really focus in on this, because it may

5    make a big difference on how the trial is configured.  So

6    that will be very helpful.  Anything else?  Mr. Nolin, I

7    think you said you had two matters.

8         MR. NOLIN:  I did, Your Honor, and I know you're not

9    going to want to hear this one, but I'm sort of obligated to

10   raise it.  I have not been retained, and I think one other

11   counsel has not been retained to take on this trial

12   post-appeal.  I'm obviously in discussions with my client,

13   but I would like, if the Court would so indulge, is a fixed

14   deadline to file a motion to withdraw in advance of trial.

15        Obviously it doesn't preclude you from denying such

16   a motion if you don't accept it, but I think that would

17   enable me to come to a resolution with my client.  At least

18   we'd both know whether or not I'm in by order of the Court or

19   by agreement with my client.

20        THE COURT:  Well, certainly that decision should not

21   go past the date by which plaintiff's expert, Mr. Finkel, is

22   to be deposed.  Do you agree with that?

23        MR. NOLIN:  Your Honor, I'd pretty much take

24   whatever date you believe is appropriate.

25        THE COURT:  It seems to me, if you're going to be

21

```
 1    deposing him in 30 days, that you and your client should make
 2    the determination of who's representing him in 20 days.
 3    Okay?
 4              MR. NOLIN:  That's certainly fair.  Thank you, Your
 5    Honor.
 6              THE COURT:  Okay.  Anything else?
 7              Okay.  This has been very helpful.
 8              MR. TRACHTENBERG:  Your Honor, you have been -- I
 9    take it there's a stenographer there.
10              THE COURT:  Correct.
11              MR. TRACHTENBERG:  Will we be able to get a
12    transcript of exactly what Your Honor said so that we're sure
13    that we brief exactly what you're looking for?
14              THE COURT:  Of course.  You just have to pay for it.
15    All right?
16              Do you -- Tracy Gow.  And her number is --
17              MR. TRACHTENBERG:  For the fee of this case, Your
18    Honor, we'd be happy to pay for this.
19              (The Court and Reporter confer.)
20              THE COURT:  All right.  So you can communicate with
21    her at (203) 910-0323.  Tracy Gow, G-O-W.
22              MR. TRACHTENBERG:  Thank you, Judge.
23              THE COURT:  Okay.  Anything further?
24              Okay.  Have a nice day.  Goodbye.
25              (Teleconference concluded, 4:41 p.m.)
```

1          COURT REPORTER'S TRANSCRIPT CERTIFICATE

2     I hereby certify that the within and foregoing is a true and

3     correct transcript taken of the proceedings in the

4     above-entitled matter.

5

6                          /s/  Tracy L. Gow
                           Tracy L. Gow, RPR
7                          Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25