UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FIH, LLC,<br><br>  *Plaintiff*,<br><br> -against-<br><br>FOUNDATION CAPITAL PARTNERS LLC, F/K/A FOUNDATION MANAGING MEMBER LLC; DEAN BARR; JOSEPH MEEHAN; THOMAS WARD; AND JOSEPH ELMLINGER,<br><br>  *Defendants*. | 15-CV-00785 (JBA) |

**DEFENDANTS DEAN BARR AND JOSEPH MEEHAN'S**
**OBJECTIONS TO PLAINTIFF'S PROPOSED TRIAL EXHIBITS AND WITNESSES**

Defendants Dean Barr ("Mr. Barr") and Joseph Meehan ("Mr. Meehan") (collectively, "Defendants") make the following objections to Plaintiff's proposed trial exhibits and witnesses:

**I. Defendants' Objections to Plaintiff's Proposed Trial Exhibits[1]**

Defendants object to Plaintiff's Proposed Trial Exhibits identified below under the Federal Rules of Evidence. Defendants also reserve the right to further object to Plaintiff's exhibits at trial.

  *i. Defendants' Objections Under Rule 402 – Relevance*

If evidence is "relevant," it is admissible "unless any of the following provides otherwise: The United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A material fact is one

---

[1] Copies of each of Plaintiff's Proposed Trial Exhibits that have been objected to will be filed with the Court under seal.

that would affect the outcome of the suit under the governing law. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006). Evidence that is not relevant is not admissible. Fed. R. Evid. 402; *Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007) (if an item of evidence does not tend to prove a material fact, it is irrelevant).

In this case, Plaintiff has brought an action under Section 10(b) of the Securities Exchange Act of 1934 in connection with the sale of equity interests in Foundation Managing Member ("FMM"). This Court has limited Plaintiff's claim to five allegedly false statements:[2] (1) a statement in due diligence materials that "the current representative [FMM] pipeline…has become increasingly active in recent months"; (2) a statement that the relationship between Mr. Barr and Mr. Meehan posed no threat to their ability to work together; (3) a failure to update Plaintiff FIH, LLC ("FIH") regarding a statement that FMM had a green light to pursue Project Apex and that Mr. Barr believed FMM could "move expeditiously on this deal;" (4) a statement that "[o]ur pipeline continues to expand with real, immediate deals"; and (5) a statement that there was nothing "FIH needed to know about [Mr. Barr's] background or personality" and no other matters concerning him that FIH should know about before proceeding with an investment. Therefore, if evidence is not relevant—as defined under Rule 401 above—to potential liability for these five statements, the Court should find that it is not admissible at trial.

Defendants object to the following exhibits on the ground that they are not relevant to any of the legal issues in dispute and should be excluded pursuant to Rule 402:

    a.    <u>Exhibit 18</u>: Exhibit 18 is a 16-page email chain among counsel for all parties discussing the retention of a former F.B.I. employee to take custody of and review the contents of the FMM server in the possession of the F.B.I.

---

[2] Plaintiff's claim against Mr. Meehan is limited to the first two of these allegedly false statements. *See* Docket No. 63 at 53.

b. <u>Exhibit 24</u>: Exhibit 24 is an email between an FMM employee and a third party discussing setting up a meeting with another third party.

c. <u>Exhibit 44</u>: Exhibit 44 is the Expert Witness Report of James K. Finkel. For the reasons set forth in Section II(b), *infra*, Defendants object to the testimony of James K. Finkel, and if the Court excludes his testimony, his expert report is irrelevant.

d. <u>Exhibit 50</u>: Exhibit 50 is a draft FMM subscription agreement dated January 1, 2013, which predates the issues before the Court.

e. <u>Exhibit 74</u>: Exhibit 74 is an email between Mr. Barr and Mr. Meehan discussing very private, personal and family issues sent between their private email addresses.

f. <u>Exhibit 76</u>: Exhibit 76 is an email chain between Mr. Barr and Mr. Meehan from April 2013 sent between their private email addresses discussing personal and family issues.

g. <u>Exhibit 80</u>: Exhibit 80 is an email chain between Mr. Meehan and FMM partner Joseph Elmlinger ("Mr. Elmlinger") forwarding an email request from Mr. Barr to an employee of FMM. The emails discuss Mr. Barr's request for an advance on his partner compensation.

h. <u>Exhibit 82</u>: Exhibit 82 is an email from Mr. Elmlinger replying to an email from Mr. Meehan, which forwarded an email chain between Mr. Barr and Mr. Meehan.

i. <u>Exhibit 83</u>: Exhibit 83 is a chain email between Mr. Barr, Mr. Meehan and an employee of FMM discussing Mr. Barr's request for an advance on his partner compensation.

j. <u>Exhibit 84</u>: Exhibit 84 is an email from Mr. Barr to FMM partner Thomas Ward ("Mr. Ward") discussing Mr. Barr's request for an advance on his partner compensation.

k. <u>Exhibit 85</u>: Exhibit 85 is an email from an employee of FMM to Mr. Meehan and Mr. Elmlinger discussing the use of company credit cards.

l. <u>Exhibit 86</u>: Exhibit 86 is an email forwarded to Mr. Barr and Mr. Elmlinger by Mr. Meehan.

m. <u>Exhibit 87</u>: Exhibit 87 is an email forwarded to Mr. Meehan from Mr. Barr regarding outstanding loans.

n. <u>Exhibit 88</u>: Exhibit 88 is an email chain dated December 2, 2012, between Mr. Meehan and Mr. Barr discussing personal issues.

3

    o.    <u>Exhibit 89</u>: Exhibit 89 is an email dated November 15, 2012 from Mr. Barr's counsel in an unrelated matter updating him on the status of unrelated litigation and forwarding same to Mr. Meehan.

    p.    <u>Exhibit 90</u>: Exhibit 90 is an email dated April 19, 2012 from a loan company unrelated to this litigation forwarded to an FMM employee by Mr. Barr in his request for an unrelated letter of credit.

    q.    <u>Exhibit 91</u>: Exhibit 91 is an email dated April 12, 2012 from Mr. Barr to Mr. Meehan discussing very personal marital issues and Mr. Barr's emotional state, almost a year before the investment at issue in this case.

    r.    <u>Exhibit 93</u>: Exhibit 93 is an email chain dated August 11, 2014 between Mr. Barr and a representative of Fortress Investment Group.

    s.    <u>Exhibit 94</u>: Exhibit 94 is an email from Mr. Barr to FMM employees, including Mr. Meehan, announcing the filing of a patent application on behalf of FMM.

    t.    <u>Exhibit 96</u>: Exhibit 96 is an affidavit of John R. Fretts. For the reasons set forth in Section II(a), *infra*, Mr. Frett's affidavit is irrelevant and inadmissible.

    u.    <u>Exhibits 101, 104, 105, 106, 107, 108, 109, 110 and 111</u>: Exhibits 101 and 104 through 111 are correspondences between counsel in this litigation regarding discovery.

    v.    <u>Exhibit 118</u>: Exhibit 118 is a letter from FIH's prior counsel to Mr. Barr and Mr. Meehan and other FMM representatives containing a draft complaint prior to this litigation.

    w.    <u>Exhibit 125</u>: Exhibit 125 is a transcript of the oral argument before the Second Circuit of Plaintiff's appeal from this Court's decision awarding summary judgment to Defendants on March 8, 2019.

    *ii.*    *Defendants' Objections Under Rule 403 – Prejudice*

Notwithstanding Defendants Objections under Rule 402 above, if the Court were to find any of the listed exhibits relevant, several of the exhibits should also be excluded under Rule 403 as their probative value is substantially outweighed by the danger of unfair prejudice. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403; *Arlio*, 474 F.3d at *53.

Defendants object the following exhibits under Rule 403:

a. <u>Exhibit 18</u>: Exhibit 18 is a 16-page email chain among counsel for all parties discussing the retention of a former F.B.I. employee to take custody of and review the contents of the FMM server in the possession of the F.B.I. Defendants object to this exhibit on the grounds that its probative value is substantially outweighed by the prejudicial nature of the irrelevant fact that the FMM server was provided to the F.B.I. as well as the risk of confusion of the issues and misleading of the jury.

b. <u>Exhibit 74</u>: Exhibit 74 is an email between Mr. Barr and Mr. Meehan discussing very private, personal and family issues sent between their private email addresses. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, and it wastes the jury's time by presenting irrelevant evidence. These topics are only being offered to tarnish Mr. Barr's perception to the jury.

c. <u>Exhibit 76</u>: Exhibit 76 is an email chain between Mr. Barr and Mr. Meehan from April 2013 sent between their private email addresses discussing personal and family issues. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, and it wastes the jury's time by presenting irrelevant evidence. These topics are only being offered to tarnish Mr. Barr's perception to the jury.

d. <u>Exhibit 80</u>: Exhibit 80 is an email chain between Mr. Meehan and Mr. Elmlinger forwarding an email request from Mr. Barr to an employee of FMM. The emails discuss Mr. Barr's request for an advance on his partner compensation. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, wasting the jury's time presenting irrelevant evidence and needlessly presenting cumulative evidence.

e. <u>Exhibit 82</u>: Exhibit 82 is an email from Mr. Elmlinger replying to an email from Mr. Meehan, which forwarded an email chain between Mr. Barr and Mr. Meehan. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as it discusses Mr. Barr's personal finances and personal spending habits outside of his duties to FMM. These topics are irrelevant to the issues at trial and are only being offered to tarnish Mr. Barr's perception to the jury; therefore, their prejudicial nature substantially outweighs any value they have to Plaintiff.

f. <u>Exhibit 83</u>: Exhibit 83 is an email between Mr. Barr, Mr. Meehan and an employee of FMM discussing Mr. Barr's request for an advance on his partner compensation. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any

probative value is outweighed by the prejudice to Mr. Barr, wasting the jury's time presenting irrelevant evidence and needlessly presenting cumulative evidence.

g. <u>Exhibit 84</u>: Exhibit 84 is an email from Mr. Barr to Thomas Ward discussing Mr. Barr's request for an advance on his partner compensation. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, wasting the jury's time presenting irrelevant evidence and needlessly presenting cumulative evidence.

h. <u>Exhibit 85</u>: Exhibit 85 is an email from an employee of FMM to Mr. Meehan and Mr. Elmlinger discussing the use of company credit cards. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, and it wastes the jury's time by presenting irrelevant evidence. This email is only being offered to tarnish Mr. Barr's perception to the jury.

i. <u>Exhibit 86</u>: Exhibit 86 is an email forwarded to Mr. Barr and Mr. Elmlinger by Mr. Meehan. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, and it wastes the jury's time by presenting irrelevant evidence. This email is only being offered to tarnish Mr. Barr's perception to the jury.

j. <u>Exhibit 87</u>: Exhibit 87 is an email forwarded to Mr. Meehan from Mr. Barr regarding outstanding loans. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, and it wastes the jury's time by presenting irrelevant evidence. This email is only being offered to tarnish Mr. Barr's perception to the jury.

k. <u>Exhibit 88</u>: Exhibit 88 is an email chain dated December 2, 2012 between Mr. Meehan and Mr. Barr discussing personal issues. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as it discusses Mr. Barr's personal family matters, personal and irrelevant litigation and his emotional state more than 14 months before the investment at issue in this case. These topics are irrelevant to the issues at trial and are only being offered to tarnish Mr. Barr's perception to the jury; therefore, their prejudicial nature substantially outweighs any probative value they might have.

l. <u>Exhibit 89</u>: Exhibit 89 is an email dated November 15, 2012 from Mr. Barr's counsel in an unrelated matter updating him on the status of unrelated litigation and forwarding same to Mr. Meehan. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, and it wastes the jury's time by presenting irrelevant evidence. These topics are only being offered to tarnish Mr. Barr's perception to the jury.

  m. <u>Exhibit 90</u>: Exhibit 90 is an email dated April 19, 2012 from a loan company unrelated to this litigation forwarded to an FMM employee by Mr. Barr in his request for an unrelated letter of credit. Defendants object to this exhibit on the grounds that it is unduly prejudicial, as any probative value is outweighed by the prejudice to Mr. Barr, and it wastes the jury's time by presenting irrelevant evidence. This email is only being offered to tarnish Mr. Barr's perception to the jury.

  n. <u>Exhibit 96</u>: Exhibit 96 is an affidavit of John R. Fretts. Defendants object to this exhibit on the grounds that its probative value is substantially outweighed by the prejudicial nature of the irrelevant fact that the FMM server in the possession of the F.B.I. as well as the risk of confusion of the issues and misleading of the jury.

  *iii.*  *Defendants' Objections Under Rule 802 – Hearsay*

Notwithstanding Defendants Objections under Rules 402 and 403 above, if the Court were to find any such exhibits relevant and probative, several of the exhibits should be excluded under Rule 802 as inadmissible hearsay. The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802.

Plaintiff seeks to admit email exhibits that contain hearsay statements made by individuals that are not parties to this action. It is well established that "[s]tatements contained in emails offered to prove the truth of the matter asserted in those statements constitute inadmissible hearsay." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181 (10th Cir. 2013) (excluding emails in an email chain between defendant and third party that were sent by third party as inadmissible hearsay). To the extent the exhibits objected to below contain statements made by

third parties that are admitted for the truth of the matter asserted, they should be excluded as inadmissible hearsay.[3]

Defendants object to the following exhibits on the grounds that they are inadmissible hearsay under Rule 802, do not meet the definition of "statements that are not hearsay" under Rule 801(d) and do not fit within any of the hearsay exceptions listed in Rule 803:

   a. Exhibit 18: Exhibit 18 is a 16-page email chain among counsel for all parties discussing the retention of a former F.B.I. employee to take custody of and review the contents of the FMM server in the possession of the F.B.I.

   b. Exhibit 24: Exhibit 24 is an email between an FMM employee and a third party discussing setting up a meeting with another third party.

   c. Exhibit 44: Exhibit 44 is the Expert Witness Report of James K. Finkel. For the reasons set forth in Section II, *infra*, Defendants object to the testimony of James K. Finkel, and if the Court excludes his testimony, this exhibit should be excluded as inadmissible hearsay.

   d. Exhibit 48: Exhibit 48 is an affidavit of Nesanel Milstein, who has been designated as a trial witness.

   e. Exhibit 52: Exhibit 52 is an affidavit of Gregory Dyra ("Mr. Dyra"), who has been designated as a trial witness.

   f. Exhibit 62: Exhibit 62 is a compilation of notes and comments made by Mr. Elmlinger and Mr. Meehan. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

   g. Exhibit 68: Exhibit 68 is an email from Thomas Ward to himself as a reminder to himself to discuss certain topics.

   h. Exhibit 72: Exhibit 72 is an email chain between Mr. Barr and Mr. Meehan that was forwarded to Mr. Elmlinger. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

---

[3] Joseph Elmlinger and Thomas Ward are no longer parties to this action and, therefore, their statements contained in email correspondence offered for the truth of the matter asserted are inadmissible hearsay.

i. <u>Exhibit 80</u>: Exhibit 80 is an email chain between Mr. Meehan and Mr. Elmlinger forwarding an email request from Mr. Barr to an employee of FMM. The emails discuss Mr. Barr's request for an advance on his partner compensation.

j. <u>Exhibit 82</u>: Exhibit 82 is an email from Mr. Elmlinger replying to an email from Mr. Meehan, which forwarded an email chain between Mr. Barr and Mr. Meehan.

k. <u>Exhibit 85</u>: Exhibit 85 is an email from an employee of FMM to Mr. Meehan and Mr. Elmlinger discussing the use of company credit cards. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

l. <u>Exhibit 86</u>: Exhibit 86 is an email forwarded to Mr. Barr and Mr. Elmlinger by Mr. Meehan. The emails from Mr. Elmlinger constitute inadmissible hearsay.

m. <u>Exhibit 87</u>: Exhibit 87 is an email forwarded to Mr. Meehan from Mr. Barr regarding outstanding loans. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

n. <u>Exhibit 89</u>: Exhibit 89 is an email from Mr. Barr's counsel in an unrelated matter updating him on the status of unrelated litigation and forwarding same to Mr. Meehan. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

o. <u>Exhibit 90</u>: Exhibit 90 is an email from a loan company unrelated to this litigation forwarded to an FMM employee by Mr. Barr in his request for an unrelated letter of credit. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

p. <u>Exhibit 93</u>: Exhibit 93 is an email chain between Mr. Barr and a representative of Fortress Investment Group. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

q. <u>Exhibit 96</u>: Exhibit 96 is an affidavit of John R. Fretts and is inadmissible hearsay. In addition, the exhibit should be excluded for the reasons set forth in Section II(a), *infra*, discussing Defendants' objection to the testimony of John R. Fretts.

r. <u>Exhibit 98</u>: Exhibit 98 is an email between two third parties, forwarding an email from Mr. Barr. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

s. <u>Exhibits 101, 104, 105, 106, 107, 108, 109, 110 and 111</u>: Exhibits 101 and 104 through 111 are correspondences between counsel in this litigation regarding

discovery. Defendants object to these exhibits on the grounds that they contain out of court statements by non-parties made for the truth for the matter asserted.

t. <u>Exhibits 116 and 117</u>: Exhibits 116 and 117 are emails between Mr. Dyra and Nesanel Milstein. Defendants object to these exhibits on the grounds that they contain out of court statements by non-parties made for the truth for the matter asserted.

u. <u>Exhibit 118</u>: Exhibit 118 is a letter from FIH's prior counsel to Mr. Barr and Mr. Meehan and other FMM representatives containing a draft complaint prior to this litigation. Defendants object to this exhibit on the grounds that it contains out of court statements by non-parties made for the truth for the matter asserted.

v. <u>Exhibit 121</u>: Exhibit 121 is an email chain between employees of FMM and a third party that was forwarded by Mr. Meehan. To the extent that it contains an email from a non-party, Defendants object to this exhibit on the grounds that it contains out of court statements by non-parties made for the truth for the matter asserted.

w. <u>Exhibit 125</u>: Exhibit 125 is a transcript of the oral argument before the Second Circuit of Plaintiff's appeal from this Court's decision awarding summary judgment to Defendants on March 8, 2019. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

x. <u>Exhibit 127</u>: Exhibit 127 is an email chain between employees of FMM. Defendants object to this exhibit to the extent it contains out of court statements by non-parties made for the truth for the matter asserted.

II. **<u>Defendants' Objections to Plaintiff's Proposed Trial Witnesses</u>**

   a. <u>Defendants Object to the Testimony of John R. Fretts ("Mr. Fretts").</u>

Plaintiff's witness list identifies John Fretts as a fact witness and states that he will testify regarding files that were "deleted" or "rendered unrecoverable" from Foundation's servers. Docket No. 243, Tab A, at A(8). Plaintiff does not contend that Mr. Fretts has any personal knowledge of facts relating to any alleged false statements, FIH's alleged reliance on those statements or any other element of Plaintiff's claim. Instead, it appears that Plaintiff intends to offer Mr. Fretts's testimony in support of a request it says it intends to make for an adverse inference. For the reasons stated below, the Court should not permit this testimony.

### i. *Any Request by Plaintiff for an Adverse Inference is Untimely*

First, Plaintiff has failed to make its request for an adverse inference in a timely manner. In the Joint Trial Memorandum, (Docket No. 243) Plaintiff states that it intends to seek an adverse inference against Defendants based on the alleged spoliation of evidence and disregard of discovery obligations. The appropriate means for Plaintiff to seek an adverse inference would have been for Plaintiff to make a motion in limine or, in the alternative, to request an instruction regarding the inference in Plaintiff's Proposed Jury Instructions. In either case, Plaintiff would have been required to support its request it with legal authority and Defendants would have had an opportunity to respond.

However, motions in limine and Proposed Jury Instructions were both due to be filed with this Court on September 16, 2019, concurrent with the Joint Trial Memorandum. It is now more than a month past the due date, and less than two weeks before trial, and Plaintiff has not provided any legal basis or support for its request. Plaintiff should not be permitted to make a motion seeking an adverse inference at this late pre-trial stage since Defendants will be prejudiced by Plaintiff's failure to raise the issue in a timely manner.

### ii. *Plaintiff Request for an Adverse Inference Fails on the Merits*

Second, even if properly and timely made, Plaintiff's request would fail on the merits. Federal Rule of Civil Procedure 37(e) states that if "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the Court "may take certain actions." The Rule places limits on the imposition of sanctions, stating further that "only upon funding that the party acted with the intent to deprive another party of the information's use in the litigation" may a court "presume that the lost information was unfavorable

to the party" or "instruct the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. Pro. 37(e) (emphasis added). In this case, FMM's servers were attacked by a ransomware virus and then turned over to the F.B.I.. There is no evidence that Defendants "acted with the intent to deprive" Plaintiff of information for use in this litigation. Thus, because Defendants have not intentionally deprived Plaintiff of any information or evidence in this litigation, any adverse inference sought by Plaintiff is not permitted under Rule 37(e) and Mr. Frett's testimony is therefore inadmissible.

        *iii.*    *Mr. Fretts's Testimony Should be Excluded Under Rule 403*

Third, Mr. Fretts's testimony should be excluded under Rule 403 on the ground that its probative value is substantially outweighed by the danger of unfair prejudice. Fact witness testimony, like document evidence, may be excluded under Rule 403. *See Rocheux Int'l of New Jersey v. U.S. Merchants Fin. Grp., Inc.*, 2009 WL 3246837, at *1, 3 (D.N.J. 2009) (excluding testimony of a paid fact witness pursuant to Rule 403). The introduction of evidence that FMM's server was in the custody of the FBI may itself unfairly prejudice Defendants by creating the perception of illegal activity by Defendants, when, in reality, Defendants were the victims of a cyber-attack. Furthermore, Mr. Fretts's testimony that electronic files and emails on the server were deleted and/or rendered unrecoverable is likely to prejudice Defendants even though Mr. Fretts will not and cannot testify that those files and emails contained any information unfavorable to Defendants. In short, Mr. Fretts's testimony has a significant risk of (i) establishing an unfair prejudice by creating the perception of illegal activity by Defendants, (ii) misleading the jury as to why a substantial number of those files were rendered unavailable—a ransomware attack by third-party criminals, (iii) confusing the issues before the jury with discussions of irrelevant cyberattacks

suffered by Defendants in a case limited to five alleged misstatements, and (iv) and needlessly extending the trial by calling an unnecessary and inappropriate witness.

        *iv.*    *Mr. Fretts's Testimony is Based on Scientific, Technical, and Specialized Knowledge*

Finally, Mr. Fretts's testimony is based on scientific, technical or other specialized knowledge, but he was not designated as an expert witness in this case. Fact witness testimony is only appropriate if it is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. of Evid. Rule 701. Here, Mr. Fretts was hired to perform an expert review of the FMM servers. According to his affidavit, Mr. Fretts "was contracted by retired Special Agent Joseph P. Dooley of JPD Forensic Accounting to perform a forensic examination of the servers…" Plaintiff's Proposed Exhibit 96 ¶ 2. Mr. Fretts bases his testimony on his "over thirty-five years of law enforcement and corporate experience, including computer forensic investigation and teaching computer forensics." *Id.* at ¶ 3. Mr. Fretts is also "certified as a Certified Computer Examiner by the International Society of Computer Investigative Professionals, and a Certified Forensic Computer Examiner by the International Association of Computer Investigation Specialists." *Id.*

Mr. Fretts's testimony is poised to be a highly technical recitation of forensic accounting based on his 35-year career in the subject matter. Based on the foregoing, Mr. Fretts should not be permitted to testify as a fact witness under Rule 701 because his testimony would clearly fall within Rule 702.

b. <u>Defendants Object to the Testimony of James Finkel ("Mr. Finkel").</u>

i. *Mr. Finkel's Testimony should be Excluded because it Usurps the Role of the Jury to Apply the Law to the Facts.*

Plaintiff's list of trial witnesses identifies James Finkel as an expert witness who will testify that "the representations at issue would have been material to [a] reasonable investor and that it was reasonable for FIH to reply on the representations at issue in the context of their investment." These are not appropriate subjects for expert testimony, as they go to the ultimate issues in the case to be decided by, and only by, the jury as the trier of fact.

The discretion of the court to admit expert testimony is governed principally by Fed. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has made clear that the district court has a "gatekeeping" function under Rule 702 such that it is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The admissibility of evidence must be established by a preponderance of the evidence, *Daubert*, 509 U.S. at 590 n. 10, and the burden of demonstrating that the testimony is competent, relevant, and reliable rests with the proponent of the testimony, *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 479 (S.D.N.Y. 2000).

Under Rule 702, an expert's opinion must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although testimony is not automatically

objectionable just because it embraces an ultimate issue, the Second Circuit has "consistently held, in that respect, that expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it,' *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991), by definition does not 'aid the jury in making a decision'; rather, it 'undertakes to tell the jury what result to reach,' and thus 'attempts to substitute the expert's judgment for the jury's,' *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *see also Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (expert testimony that even implicitly communicates a legal standard is objectionable).

"It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions." *United States v. Articles of Banned Hazardous Substances*, 34 F.3d at 96; *see United States v. Bilzerian*, 926 F.2d at 1294 (2d Cir.), *cert. denied*, 502 U.S. 813 (1991). ("As a general rule an expert's testimony on issues of law is inadmissible."). To allow such opinions would "trespass [] on the province of the jury and the trial court" by imposing the expert's view on the parameters of the law and whether or not it has been violated. *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993). Mr. Finkel's testimony should be excluded at trial because it improperly "usurps the role of the jury" by "undertaking to tell the jury what verdict to reach" *Nimely*, 414 F.3d at 397.

Plaintiff intends to call Mr. Finkel to inappropriately testify to the reasonableness of Plaintiff's reliance on the allegedly false statements made by the Defendants and the alleged materiality of such statements. According to Mr. Finkel's Expert Report, Mr. Finkel "was asked by counsel for FIH to analyze whether, as a matter of Private Equity industry practice, it was reasonable for FIH to rely on…" the allegedly false statements at issue in this case. Plaintiff's

Proposed Exhibit 44 at 7. Moreover, Mr. Finkel stated in his deposition that his assignment was to "opine as to the reasonable reliance of certain statements made by [FMM] and certain of its principals as to the pipeline and activity – potential investment activity of [FMM] and as well as to the reasonable reliance on statements about certain personal interactions or activities of some of the partners and [FMM]." Finkel Dep. Tr. 11-12. Mr. Finkel repeatedly provides his conclusory opinion as to the importance of the statements and the reasonableness of FIH's reliance throughout his report. Plaintiff's Proposed Exhibit 44 at 8, 9, 14, 18, 20, 22 and 24.

Whether a party acted with objective reasonableness is a question for the jury, or as the Southern District of New York states, "a quintessential common law jury question." *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V.*, 14 F. Supp. 2d 391 (S.D.N.Y. 1998). Furthermore, this Court has previously found that statements made by an expert on whether a passive investor reasonably reposed its trust and confidence in an active investor to act as a faithful steward of its investments must be excluded because the statements contain "factual issues to be decided by the jury." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258 (D. Conn. Sept. 29, 2017).

It is clear that the reasonableness of reliance and importance—or materiality—of the allegedly false statements are issues of fact at trial and are determinations for the jury to decide. *See* Defendant Barr's Proposed Jury Instructions (Docket No. 243, Tab H, p. 5-8); *see also Kidder, Peabody & Co.*, 14 F. Supp. at 391. Courts within the Second Circuit have consistently found error where the district court admitted testimony stating ultimate legal conclusions based on disputed issues of fact. *See Kidder, Peabody & Co.*, 14 F. Supp. at 391(excluding expert testimony of a professor of law who sought to opine on whether Plaintiff acted reasonably and in good faith as these questions are to be decided by the jury); *Snyder v. Wells Fargo Bank, N.A.*, 594 F. App'x

710, 714 (2d Cir. 2014) (expert testimony stating that financial institution breached contractual and fiduciary duties "went to ultimate issues for jury resolution" and was not admissible);

Here, Mr. Finkel's testimony goes beyond assisting the trier of fact to come to a conclusion as to the reasonableness of FIH's alleged reliance and the materiality of the statements in dispute and instead tells the jury what conclusions to reach on these two key disputed issues. Mr. Finkel's statements are clearly conclusory and usurp the role of the jury by telling them exactly how to decide the ultimate issues of materiality and reasonable reliance. For these reasons, Mr. Finkel's testimony should be excluded from trial.

    ii. *Mr. Finkel's Testimony Should Also Be Excluded Because It Is Not Reliable*

In addition to the above, neither Mr. Finkel nor Plaintiff has demonstrated that Mr. Finkel's testimony is (i) based upon sufficient facts or data (ii) the product of reliable principles and methods, and (iii) the product of Mr. Finkel applying the principles and methods reliably to the facts of the case as required under Rule 702. Fed. R. Evid. 702.

Mr. Finkel repeatedly states in his report that his opinion is based on "Private Equity industry standards and practices." Plaintiff's Proposed Exhibit 44 at 8, 9, 13, 14, 15, 16, 17, 21 and 24. However, Mr. Finkel does not state the Private Equity industry standards and practices on which his opinion is based. *See generally* Finkel Dep. Tr. For this reason alone, Mr. Finkel's expert testimony should be excluded as neither Plaintiff nor Mr. Finkel has demonstrated that Mr. Finkel's testimony is based on a "reliable foundation" as required by the Supreme Court. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

For the foregoing reasons, Defendants respectfully request that the Court exclude Mr. Finkel's expert testimony.

Dated:  October 23, 2019     By: _____

Joseph M. Pastore III (CT11431)
PASTORE & DAILEY LLC
4 High Ridge Park
Stamford, CT 06905
Telephone: (203) 658-8454
Facsimile: (203) 348-0852
Email: jpastore@psdlaw.net
*Counsel for Defendants Dean Barr and Joseph Meehan*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2019, a copy of the foregoing Objections to Plaintiff Proposed Trial Exhibits and Witnesses was filed electronically and will be served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: _____
Joseph M. Pastore III (CT11431)
Pastore & Dailey LLC
4 High Ridge Park
Stamford, CT 06905
Tel: (203) 658-8454
Fax: (203) 348-0852
Email: jpastore@psdlaw.net